IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| ) | **COMPLAINT** |
| ) | |
| v. ) | JURY TRIAL DEMAND |
| ) | |
| PIEDMONT CHEERWINE ) | |
| BOTTLING COMPANY. ) | |
| ) | |
| Defendant. ) | |

## NATURE OF THE ACTION

This action is filed pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices because of a disability and to provide appropriate relief to Denise Robinson ("Ms. Robinson"), who was adversely affected by such practices. Plaintiff Equal Employment Opportunity Commission (the "Commission") alleges that Defendant Piedmont Cheerwine Bottling Company ("Cheerwine") violated the ADA when it discharged Ms. Robinson because of her disability or because it regarded her as disabled in violation of the ADA, 42 U.S.C. § 12101, et seq. Additionally, the Commission alleges that Defendant Cheerwine violated the ADA when it subjected Ms. Robinson to an impermissible medical examination in violation of the ADA. 42 U.S.C. § 12112(d)(4).

1

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706 (f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## PARTIES

4.  The Commission is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706 (f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5.  Defendant Cheerwine, a North Carolina company, manufactures and distributes soft drinks at its facility located at 2913 Sandy Ridge Road, Colfax, North Carolina (the "Facility").

6.  At all relevant times, Defendant Cheerwine has continuously done business in the State of North Carolina and in Guilford County, North Carolina and has continuously maintained at least fifteen (15) employees.

2

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

9. More than thirty (30) days prior to the institution of this lawsuit, Ms. Robinson filed a charge with the Commission alleging violations of the ADA by Defendant.

10. Defendant responded to Ms. Robinson's charge and participated in the Commission's administrative investigation.

11. On March 31, 2025, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA.

12. The Commission invited Defendant to join the Commission in informal methods of conciliation to eliminate the discriminatory practices and provide relief.

13. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

15. By letter dated May 9, 2025, the Commission notified Defendant that conciliation had failed.

16.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

17.     The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 16 above.

18.     Ms. Robinson is a qualified individual with a disability under the ADA. 42 U.S.C. §§ 12102 and 12111(8).

19.     Ms. Robinson is an individual diagnosed with multiple sclerosis ("MS"), a progressive disease of the central nervous system that substantially limits related bodily functions, including neurological function.

20.     Medication Ms. Robinson previously took to treat symptoms related to MS caused the cartilage in her hip to deteriorate and caused her to walk with a noticeable limp for a substantial period of time.

21.     On or about February 1, 2023, Ms. Robinson had an in-person interview with one of Defendant's District Managers and the General Manager of the Facility for a Store Merchandiser position.

22.     The job of Store Merchandiser required lifting, standing, walking, sitting, stooping, crawling, and balance.

23.     Upon information and belief, the District Manager asked Ms. Robinson if she would be able to safely perform the Store Merchandiser job functions because of her limp. Ms. Robinson told the District Manager that she could safely perform the job functions.

24.     Defendant requires new employees for the Store Merchandiser position to undergo

a physical agility test after working approximately 520 hours or 90 days in the position.

25. Upon information and belief, the District Manager advised Ms. Robinson that she would be required to onboard through a staffing agency and complete the physical agility test before she could be offered a permanent position.

26. The physical agility test was developed at Defendant's request. Defendant engaged an outside occupational medical consultant to study the physical requirements of the Store Merchandiser position and develop an agility test to determine (1) whether the worker can perform the essential functions of the Store Merchandiser position and (2) whether the position presents a direct threat of injury to the worker or others.

27. On or around February 12, 2023, Ms. Robinson began working as a Store Merchandiser, reporting to District Manager R.M.

28. At all relevant times, Defendant maintained direct control over the essential terms and conditions of Ms. Robinson's employment, including work schedule, job duties, supervision, and performance evaluation.

29. Ms. Robinson was qualified to perform the role of Store Merchandiser.

30. Ms. Robinson successfully performed her job in a manner that met Defendant's legitimate job performance expectations.

31. Ms. Robinson was never counseled, reprimanded or disciplined for failing to meet Defendant's legitimate job performance expectations.

32. At all relevant times, Defendant regarded Ms. Robinson as disabled.

## COUNT I:
### *Discharge, or alternatively, failure to hire in violation of the ADA*
### *42 U.S.C. § 12112 (a) and (b)(5)*

33. The Commission realleges and incorporates by reference allegations set forth in paragraphs 1 through 32 above.

34. In March 2023, Defendant engaged in unlawful employment practices at the Facility in violation of the ADA by discharging Ms. Robinson, or in the alternative, by failing to permanently hire her, for the Store Merchandiser position because of her disability or because it regarded her as disabled.

35. In or around March 22, 2023, Defendant required Ms. Robinson to undergo the physical agility test, weeks earlier than other employees, because of her disability.

36. Ms. Robinson completed the test and returned to working her regular schedule while waiting for the results.

37. In or around March 29, 2023, Defendant received the results of Ms. Robinson's physical agility test.

38. The test results indicated Ms. Robinson met all four job-specific physical requirements needed to perform the Store Merchandiser position.

39. The test results noted that Ms. Robinson had "right hip decreased strength and ROM, gait abnormalities, and difficulty squatting" and recommended that Ms. Robinson "obtain complete medical clearance from a medical doctor familiar with [these conditions and] the physical demands of a Merchandiser before a final placement decision is rendered." (emphasis removed)

40. On or around March 29, 2023, Defendant's Human Resources (HR) Manager

6

emailed Defendant's General Manager and a representative from the staffing agency about Ms. Robinson's agility test results stating: "This is serious. I don't want this to go past 2 weeks. I know she has been doing the job, but the question is the risk for injury."

41. On that same day, the General Manager placed Ms. Robinson on a leave of absence until she could obtain medical clearance to perform the job.

42. Later that same day, without waiting for a completed medical clearance form, the HR Manager directed the General Manager to end Ms. Robinson's employment.

43. The General Manager instructed the staffing agency to inform Ms. Robinson that her assignment ended.

44. On or around March 30, 2023, Ms. Robinson provided the General Manager with her doctor's note clearing her to return to work. The note was rejected and Ms. Robinson was advised that her employment had been terminated.

45. Defendant was fully aware of Ms. Robinson's medical condition and mobility restrictions and regarded her as disabled.

46. The practices complained of above are unlawful and in violation of the ADA.

47. The practices complained of above have deprived Ms. Robinson of equal employment opportunities and have adversely affected her status as an employee because of her disability.

48. The practices complained of above were intentional.

49. The practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Ms. Robinson.

50. As a direct and proximate result of Defendant's violation of the ADA, Ms. Robinson

7

suffered actual damages, including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT II:
### *Unlawful Medical Examination in Violation of the ADA*
### *42 U.S.C. § 12112 (d)(4)*

51. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 above.

52. On March 22, 2023, Defendant engaged in unlawful employment practices at the Facility by subjecting Ms. Robinson to an unlawful medical examination.

53. Upon information and belief, Defendant requires employees to complete approximately 520 hours or 90-days of a probationary period. At the end of the probationary period, employees are required to undergo a physical agility test before becoming permanent and transferred to Defendant's payroll.

54. Upon information and belief, Ms. Robinson was the only probationary employee required to undergo the agility testing weeks before the end of the probationary period.

55. Ms. Robinson was required to undergo the agility test before the end of the probationary period because of her disability.

56. The exam was conducted and interpreted by a physical therapist. It was designed to reveal physical impairments and involved the collection of sensitive medical information through blood pressure testing and range of motion testing. The exam was conducted by a medical professional in a medical setting.

57. During the agility test, Ms. Robinson's blood pressure and weight were collected, and she was subjected to range of motion testing during the agility test.

8

58. During the agility test, the physical therapist asked Ms. Robinson about her hip.

59. Ms. Robinson explained to the physical therapist that MS medication caused the cartilage in her hip to deteriorate and, as a result, she walked with a limp.

60. The practices complained of above are unlawful and in violation of the ADA.

61. The practices complained of above deprived Ms. Robinson of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability.

62. The practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Robinson.

63. As a direct and proximate result of Defendant's unlawful conduct, Ms. Robinson suffered actual damages, including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from discriminating against individuals because of their disabilities, including termination based on disability and subjecting individuals with a disability to a medical examination in violation of the ADA.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with a disability, and which eradicate the effects of past and present unlawful employment practices.

9

C.  Order Defendant to make Ms. Robinson whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.  Order Defendant to make Ms. Robinson whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.  Order Defendant to make Ms. Robinson whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F.  Order Defendant to pay to Ms. Robinson punitive damages for its willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

G.  Grant such other relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its cost of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact that arise out of this complaint.

Respectfully submitted this the 8th day of September, 2025.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

ANDREW ROGERS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, D.C. 20507

*/s/ Melinda C. Dugas*
MELINDA C. DUGAS
Regional Attorney
129 W. Trade Street
Charlotte, NC 28202

YLDA KOPKA
Assistant Regional Attorney

By Counsel:
*/s Taittiona Miles*
TAITTIONA MILES
Trial Attorney
Bar No. 50879
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
129 W. Trade Street
Charlotte, NC 28202
Telephone: (980) 296-1301
Facsimile: (704) 954-6412
Email: taittiona.miles@eeoc.gov

11